Judy HARTMAN and Ronald Delap, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

WINNEBAGO COUNTY, a municipal corporation, Winnebago County Board of Supervisors, Winnebago County Social Services Board, and the Winnebago County Department of Social Services, Defendants-Respondents.†

Court of Appeals

*No. 96–0596. Submitted on briefs December 16, 1996.—Decided February 5, 1997.*

(Also reported in 561 N.W.2d 768.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jeff Scott Olson* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John E. Thiel* and *Rebecca L. Kent* of *Godfrey & Kahn, S.C.* of Oshkosh.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. Judy Hartman and others (collectively, Hartman) in this class action suit appeal from an order denying their motion for an award of attorney's fees under 42 U.S.C. § 1988. The circuit court determined that Hartman was not entitled to attorney's fees because they had not demonstrated that they were "prevailing parties" in this suit and because their motion for attorney's fees was untimely. We conclude that Winnebago County and others (collectively, the County) were not unfairly surprised or prejudiced by Hartman's motion for attorney's fees, thereby rendering the motion timely. We further conclude that Hartman met their burden of establishing a causal link between this litigation and the remedial changes made by the County and proving that the remedial changes were required by law. We therefore reverse the circuit

court's order and remand for a determination of reasonable attorney's fees.

The facts leading up to this third appeal are undisputed and shall be compiled from the two previous unpublished decisions by this court.[1] General relief in Wisconsin is administered through the counties pursuant to ch. 49, STATS.[2] In September 1990, the Winnebago County Social Services Board adopted a reduction in the amount of general relief available for Winnebago county recipients. The changes were scheduled to go into effect on October 1, 1991. The reduction in benefits was not based on a determination of the actual cost of the standard of living in Winnebago county; rather, the minutes of the meeting state that the benefits would be reduced to "whatever the State minimum is as stated in SS 49.032(1)(c) and (d)." *Hartman v. Winnebago County*, No. 91-2414, unpublished op. at 2-3 (Wis. Ct. App. April 22, 1992) (*Hartman I*).

On October 4, 1990, Hartman commenced this action and sought injunctive and declaratory relief. Hartman made the following six claims:

(1) The county's action in reducing the amount of general relief and its failure to furnish relief in a reasonable amount violates sec. 49.01(5m), Stats.

(2) The county's failure to establish written standards of need violates sec. 49.02(1m), Stats.

---

[1] The two unpublished decisions are: *Hartman v. Winnebago County*, No. 91-2414, unpublished op. (Wis. Ct. App. April 22, 1992) (*Hartman I*), and *Hartman v. Winnebago County*, No. 94-0022, unpublished op. (Wis. Ct. App. April 19, 1995) (*Hartman II*).

[2] The general relief program at issue in this case was amended by 1995 Wis. Act 27, §§ 2638 through 3220. However, the changes do not affect our analysis on appeal.

(3) The county's failure to engage in a procedure which is designed to determine a reasonable standard of need violates the due process requirements of the federal and state constitutions.

(4) The county violated the minimum standards of sec. 49.032, Stats.

(5) The county's failure to provide adequate notice required by sec. 49.037(6), Stats., prior to the implementation of the reduction in relief violated the due process rights guaranteed by the federal and state constitutions.

(6) The county's adoption of a policy creating a ten-day limit on the right to appeal violates sec. 49.037, Stats.; due process rights under the federal and state constitutions; and creates a cause of action under 42 U.S.C. sec. 1983.

*Id.*, unpublished op. at 3-4. The trial court issued a temporary injunction enjoining the county from implementing the relief reduction.

On May 6, 1991, the board rescinded the September 10 reduction and restored the benefits to the original levels. The minutes indicate that the rescission was in response to the Hartman litigation. The minutes of the May 6, 1991 meeting state:

John Bodnar discussed the possibility of revoking the General Relief rent levels which were set in 9/90, back to their original amount of $260. He indicated that *we are involved in litigation right now, and it will probably continue if we don't lower the rent levels.* We are under an injunction because we didn't have adequate criteria for lowering the levels last September.

*Id.*, unpublished op. at 5 n.1 (emphasis added). The circuit court subsequently granted the County's motion

to dismiss the class action as moot. Hartman appealed. *See id.*, unpublished op. at 5.

In *Hartman I*, we held that despite the rescission, a question remained as to whether the County had proper standards of need in place and, if so, whether they were adequate under the applicable law. *See id.*, unpublished op. at 7. Because the matter was not moot in this respect, we remanded to the circuit court for this determination. *See id.* On remand, the circuit court ruled that the County had enacted valid standards. Hartman appealed for a second time.

During the pendency of the second appeal, *Hartman v. Winnebago County*, No. 94-0022, unpublished op. (Wis. Ct. App. April 19, 1995) ( *Hartman II*), the supreme court decided *Clark v. Milwaukee County*, 188 Wis. 2d 171, 524 N.W.2d 382 (1994). Thereafter, the County moved this court to reopen the record or remand to the circuit court for a determination as to whether the written standards of need which were the subject of the second appeal complied with *Clark*. Hartman opposed the motion. *See Hartman II*, unpublished op. at 3. We then received an amended motion from the County advising that it had revised its written standards of need to comply with *Clark* and that the revisions made the issues on appeal moot. *See Hartman II*, unpublished op. at 3. The County asked that we either remand to the circuit court for a determination or declare the appeal moot while Hartman sought a decision addressing the adequacy of the new standards. *See id.* Because the appeal involved new law and facts which had not been considered by the circuit court, we dismissed the appeal as moot. *See id.*, unpublished op. at 4-5.

Seven months later, on November 16, 1995, Hartman filed their motion for an award of attorney's fees

under 42 U.S.C. § 1988 for work done on *Hartman I* and *II*. The circuit court found that Hartman was not a prevailing party; rather, whatever positive results inured to Hartman came about because of the *Clark* case. In the alternative, the circuit court determined that Hartman's motion was untimely and dismissed the motion. Hartman appeals.

Hartman first argues that their motion for attorney's fees was timely. A plaintiff may not recover attorney's fees in his or her claim against the defendant unless such liability arises from a specific statute or the contract of the parties. *See Production Credit Ass'n v. Laufenberg*, 143 Wis. 2d 200, 203, 420 N.W.2d 778, 779 (Ct. App. 1988). Hartman claims attorney's fees under 42 U.S.C. § 1988(b). In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Section 1988(b).[3] The determination of the amount of reasonable attorney's fees is discretionary with the trial court. *See Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 305, 340 N.W.2d 704, 712 (1983). A trial court's award of attorney's fees under § 1988 will only be reversed if the trial court misused its discretion. *See id.*

Hartman asserts that "[t]he only timeliness bar on attorneys' fees applications recognized in the *White* opinion [*White v. New Hampshire Dep't of Employment*

---

[3] Fees may be awarded under 42 U.S.C. § 1988 to a prevailing party who is represented by a nonprofit counsel. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In such circumstances, the award belongs to the organization which provided counsel. *Shands v. Castrovinci*, 115 Wis. 2d 352, 361, 340 N.W.2d 506, 510 (1983).

*Sec.*, 455 U.S. 445 (1982)], was a suggestion that courts retained the discretion to deny fees 'in cases in which a post-judgment motion unfairly surprises or prejudices the affected party.' " Hartman maintains that their fee application was filed within a reasonable time after the termination of the litigation because the County was not unfairly surprised or prejudiced by the application.

The County counters that an application for attorney's fees is governed by § 806.06(4), STATS., which contains a thirty-day deadline for the entry of a judgment. The County further argues that Hartman's application "is not only untimely under state law, but it is also untimely under Rule 54(d) of the Federal Rules of Civil Procedure." In the alternative, the County maintains that Hartman's application was not filed within a reasonable time.

The circuit court held in favor of the County. The circuit court specifically found that (1) Hartman's motion was untimely because it was not filed within thirty days of the plaintiffs' receipt of notice of entry of the judgment under § 806.06(4), STATS.; (2) if federal law is applicable, the motion was still "untimely because it was not filed within the 14-day limitation of Rule 54(d)"; and (3) the motion "was not filed within a reasonable period of time as a matter of law because it was filed more than six (6) months after entry of the judgment." We disagree.

■

There are neither procedural rules nor Wisconsin cases discussing the timeliness of attorney's fees under 42 U.S.C. § 1988. *See, e.g., Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 230, 533 N.W.2d 746, 757 (1995) (holding § 805.16, STATS., time limits inapplicable to a petition for attorney's fees, cert. denied, 116 S. Ct. 753 (1996)); *Northwest Wholesale Lumber, Inc. v.*

*Anderson, Inc.*, 191 Wis. 2d 278, 292, 528 N.W.2d 502, 508 (Ct. App. 1995) (requiring both §§ 814.025 and 802.05, STATS., *frivolous-costs motions* be filed prior to the entry of judgment in the case). Accordingly, we adopt that rule set forth in *White* regarding the timeliness of attorney's fees. The Supreme Court in *White* concluded that "[s]ection 1988 authorizes the award of attorney's fees 'in [the] discretion' of the court. We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party." *White*, 455 U.S. at 454. Moreover, the concept of laches is that a party is to be forgiven his or her unreasonable delay, provided it has had no prejudicial consequences. *See Baird v. Bellotti*, 724 F.2d 1032, 1033-34 (1st Cir. 1984). Because there was no showing by the County, or a finding by the circuit court, of unfair surprise or prejudice, we conclude that the trial court misused its discretion in denying Hartman's motion for § 1988 attorney's fees as untimely.

■
Our conclusion is in keeping with the purposes of 42 U.S.C. § 1988(b) attorney's fees awards. The Civil Rights Attorney's Fees Awards Act of 1976, § 1988, was designed to allow private individuals a meaningful opportunity to vindicate civil rights violations. *See Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992). Section 1988

> instructs a lawyer to critically evaluate the prospects for success in each potential civil rights claim, and it encourages the lawyer to proceed only with those claims that are indeed meritorious. The lawyer can go forward with difficult arguments, confident that the client's fee award will reflect the obstacles that the attorney overcomes. The lawyer

564

can go forward with nonmonetary claims, secure in the knowledge that the fee award will not be diminished on account of the absence of damages.

*Thompson*, 115 Wis. 2d at 312, 340 N.W.2d at 715 (quoting *Cooper v. Singer*, 719 F.2d 1496, 1502 (10th Cir. 1983)). The litigant acts as a private attorney general "vindicating a policy that Congress considered of the highest priority." *State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 78, 508 N.W.2d 603, 609 (1993) (quoted source omitted); *cf. Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.*, 190 Wis. 2d 650, 663-64, 529 N.W.2d 905, 910 (1995).

■

We further conclude that § 806.06(4), STATS., does not govern the time limits for an application for attorney's fees. Section 806.06(4) provides in relevant part, "A judgment may be rendered and entered at the instance of any party either before or after perfection. If the party in whose favor the judgment is rendered causes it to be entered, the party shall perfect the judgment within 30 days of entry or forfeit the right to recover costs." This presents a question of statutory construction, which we review as a question of law independently of the trial court. *See State v. Timmerman*, 198 Wis. 2d 309, 316, 542 N.W.2d 221, 224 (Ct. App. 1995). When construing a statute, our purpose is to determine and give effect to the intent of the legislature. *See id.* We give the language of an unambiguous statute its ordinary meaning. *See id.*

■

We conclude that § 806.06(4), STATS., is not ambiguous. Judgment, as referred to in § 806.06(4), is a final or interlocutory determination of *the action. See* § 806.01(1)(a), STATS. However, we have previously explained that an attorney's fee issue under 42 U.S.C.

§ 1988 is related to but separate from the underlying action. *See ACLU v. Thompson*, 155 Wis. 2d 442, 446-47, 455 N.W.2d 268, 270 (Ct. App. 1990). "A petition for attorney fees . . . is not trial-related; rather, it is verdict-related as it is predicated on a party's prevailing party status." *Gorton*, 194 Wis. 2d at 230, 533 N.W.2d at 757. In particular, attorney's fees awardable in a civil rights action under § 1988 "are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial." *Thompson*, 155 Wis. 2d at 447, 455 N.W.2d at 270 (quoting *White*, 455 U.S. at 452). Since petitions for § 1988 attorney's fees are separate from the judgment underlying the suit, we decline the County's invitation to base the time limit for filing a petition for attorney's fees upon the statute governing the underlying judgment.

■

Moreover, a strong policy disfavors interlocutory, multiple or piecemeal appeals. *See Thompson*, 155 Wis. 2d at 448, 455 N.W.2d at 271. Even though multiple appeals may occur under 42 U.S.C. § 1988, the *Thompson* holding suggests that in order to economize time, circuit courts should postpone a fee issue until after appeal. *See Thompson*, 155 Wis. 2d at 448, 455 N.W.2d at 271. Contrary to the County's position, we do not take this to mean that petitions for attorney's fees must be filed prior to the entry of judgment. Rather, we interpret *Thompson* as proposing just the opposite procedure—if plaintiff prevails at trial and defendant prevails on appeal, the fee issue becomes moot; if, however, plaintiff prevails on appeal, the trial court can dispose of plaintiff's trial and appellate fees in a single hearing. *See id.*

██

Lastly, we note that the circuit court's order alternatively applied RULE 54(d) of the Federal Rules of Civil Procedure to this case. This position is untenable. The Federal Rules of Civil Procedure are only applicable to proceedings in the "Courts of the United States, and can not be applied to the practice or procedure in State Courts." *See Rader v. Baltimore & O.R. Co.*, 108 F.2d 980, 986 (7th Cir. 1940).[4]

Next, Hartman contends that they are "prevailing parties" within the meaning of 42 U.S.C. § 1988 and are therefore entitled to an award of attorney's fees. The circuit court disagreed and denied their motion. " 'The standard of review of an award of attorneys' fees to the prevailing party under § 1988 is whether the trial court [misused] its discretion in making or denying the award.' " *Stewart v. McGinnis*, 5 F.3d 1031, 1039 (7th Cir. 1993) (quoted source omitted). We only find a misuse of discretion if " 'no reasonable person could take the view adopted by the trial court.' " *Id.* (quoted source omitted).

██

A plaintiff must be a "prevailing party" to recover attorney's fees under 42 U.S.C. § 1988. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980). A plaintiff may be a prevailing party for purposes of § 1988 even if the defendant voluntarily provides the relief sought rather than litigating the suit to judgment. *See Zinn v. Shalala*, 35 F.3d 273, 274 (7th Cir. 1994). Indeed, attor-

---

[4] We acknowledge the County's argument that because the federal rules have changed, we should not apply *White*. The flaw in this argument is that the Wisconsin Rules of Civil Procedure have not changed in accordance with the Federal Rules of Civil Procedure. Accordingly, we conclude that the standards enunciated in *White* are applicable.

ney's fees can be appropriately awarded when a suit has been mooted due to the defendant's voluntary action. *See Hewitt v. Helms,* 482 U.S. 755, 760-61 (1987) (when a lawsuit produces voluntary action by the defendant that affords the plaintiff all or some of the relief he or she sought through a judgment, the plaintiff is nevertheless deemed to have prevailed); *see also J.S. v. DHSS,* 144 Wis. 2d 670, 680-81, 425 N.W.2d 15, 20 (Ct. App. 1988).

In such a case, the two-part catalyst test is applied. *See Zinn,* 35 F.3d at 274. The catalyst test requires the plaintiff to first show that his or her lawsuit is causally linked to the relief obtained, "i.e. the suit must be a 'substantial factor or a significant catalyst' in prompting the defendants to act or cease their behavior." *Kansas Health Care Ass'n v. Kansas Dep't of Soc. and Rehabilitation Servs.,* 31 F.3d 1052, 1053 (10th Cir. 1994)(quoted source omitted). The plaintiff must also establish that the defendant's conduct was required by the Constitution or federal law, "i.e. the defendant's actions [in response to the lawsuit] must be legally required."[5] *Id.*

---

[5] The catalyst test was first enunciated in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978), and was adopted by the Seventh Circuit in *Harrington v. DeVito,* 656 F.2d 264 (7th Cir. 1981). The circuits however have emphasized different language from *Nadeau* in determining the second prong. Some emphasize "required by law"; whereas the Seventh Circuit considers whether the plaintiff's claim, if pressed, would have been "frivolous, unreasonable, or groundless." *Zinn v. Shalala,* 35 F.3d 273, 274 (7th Cir. 1994). The latter language is considered by some circuits as only one example of the type of conduct referred to by the court, i.e., required by law. *See Kansas Health Care Ass'n v. Kansas Dep't of Soc. and Rehabilitation Servs.,* 31

A different standard of review applies to each step of this test. The first element involves a factual inquiry—whether the lawsuit caused the defendant to act. Thus, "[i]f the 'prevailing party' issue turns on the first element, then the appellate court should apply the clearly erroneous standard of review." *Id.* The second element primarily requires legal analysis; accordingly, "[i]f the 'prevailing party' issue is resolved by whether a defendants' actions are legally required, then *de novo* review is appropriate." *Id.*

Hartman contends that they have satisfied both elements. They first point out that this court found that a causal connection existed in *Hartman I*. They further argue that the County's eventual establishment of standards "was not only caused by the litigation, but was required by not only state law but federal constitutional due process as well." As alleged in their complaint, "[T]he county's failure to engage in a procedure which is designed to determine a reasonable standard of need violates the due process requirements of the federal and state constitutions."

The circuit court found that "[p]laintiffs have failed to meet their burden of proving and the record fails to show that defendants' actions were the result of any determination on the merits of their litigation B." The circuit court also found that the plaintiffs had not demonstrated that they were prevailing parties in this action—they "did not prevail on any issue relating to

F.3d 1052, 1055 (10th Cir. 1994). Both analyses look to the provocative role of the plaintiff's lawsuit and not the motivations of the defendant. *See Nadeau*, 581 F.2d at 280. We will address both variations, in terms of "required by law" and "frivolous, unreasonable, or groundless."

their claims for civil rights violations" or "on any of the other claims that they made."

We disagree. First, the record clearly establishes that the County rescinded the reduction in benefits in response to the Hartman suit. The minutes indicate that John Bodnar, corporate counsel, "discussed the possibility of revoking the General Relief rent levels which were set in 9/90, back to their original amount of $260. He indicated that we are involved in litigation right now, and it will probably continue if we don't lower the rent levels." This court has previously determined that "the rescission was in response to the litigation rather than in response to its statutory duty to issue written standards of need." *Hartman I*, unpublished op. at 6. We therefore conclude that Hartman has met the causal element; the circuit court's finding to the contrary is clearly erroneous.

As to the second prong, we conclude that the County was legally required to establish *written standards* of need to be used to determine the type and amount of general relief to be furnished under § 49.02(1m), STATS., and therefore, Hartman's claim was not groundless or unreasonable. As pointed out by the circuit court, the County maintained throughout the litigation, at least until the post-*Clark* revisions, that "the general relief benefits and the schedule established by the county are their determination in writing of the standards of need." The circuit court found that the schedule satisfied the statutory requirements.

The circuit court misused its discretion in making this finding. As the supreme court made clear in *Clark*, "[w]ritten benefit levels are not the equivalent of written standards of need." *Clark*, 188 Wis. 2d at 181, 524 N.W.2d at 386. "[W]ritten standards of need must focus

upon the quality and quantity of rental units available to those in need of the general relief shelter allowance." *Id.* Under § 49.02(1m), STATS., the County must set minimum standards for adequate and decent housing and then use those standards to objectively establish the shelter allowance which is then paid to eligible recipients. *See Clark*, 188 Wis. 2d at 181–82, 524 N.W.2d at 386. As Hartman alleged, the County was required by law to establish written standards of need, i.e., more than the basic schedule.

We also disagree with the circuit court's statement that "[t]he reason for any results that came about was because of the *Clark* case which is pointed out." Hartman unequivocally challenged the statutory and due process violations by the County's failure to have written standards as required by § 49.02(1m), STATS., and sought declaratory and injunctive relief to prevent its enforcement. However, the County's revisions eliminated the possibility of using only the schedule to distribute shelter allowances, thus assuring that any future distributions would be based on written standards of need. The fact that the 1995 revision effectively resolved the key issue of Hartman's case does not mean that Hartman somehow failed in their effort to cure a constitutionally and statutorily defective general relief schedule of benefits. The County recognized that the schedule was inadequate and required revisions. The fact that amendments were necessary, combined with the fact that the County did not act until sued, illustrates the "cause and effect" that enables Hartman to claim success. *See Richard v. City of Pasadena*, 889 F. Supp. 384, 390 (C.D. Cal. 1995) (The chronology of events and defendants' own statements "demonstrate the 'cause and effect' that

enables plaintiffs to claim success—defendants acquiesced, and quickly at that."). We conclude that Hartman prevailed in obtaining an important part of the relief they sought—written standards of need for use in setting the shelter allowance.

■

Moreover, the County has failed to show "the worthlessness of plaintiff's claims and explain why [defendant] nonetheless voluntarily gave the plaintiffs the requested relief." *See id.* at 388–89 (quoted source omitted). In the County's motion to amend to this court, dated January 27, 1995, it acknowledged that revisions to the general relief policy were required to comply with "the mandates of the *Clark* decision." This argument necessarily concedes that Hartman's challenge to the County's original benefit schedule was well taken in the first instance. Furthermore, there is absolutely no evidence that the County would have adopted the 1995 revisions but for Hartman's lawsuit. At the time Hartman sued (in 1990), the County's original benefit schedule was statutorily (and constitutionally) deficient and it took separate revisions (in 1995) to rescue it. Under these circumstances, Hartman's claims were far from groundless.

■

In sum, we conclude that because there was no showing by the County of unfair surprise or prejudice, the trial court misused its discretion in denying, as untimely, appellants' motion for attorney's fees under 42 U.S.C. § 1988. We further conclude that the appellants were the prevailing parties in this suit within the meaning of § 1988 and are therefore entitled to an award of attorney's fees. Accordingly, we reverse the trial court's order to the contrary and we remand for a determination of reasonable attorney's fees utilizing

the "lodestar"—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—as its starting point. *See Bialk v. Milwaukee County*, 180 Wis. 2d 374, 381–82, 509 N.W.2d 334, 338 (Ct. App. 1993).

*By the Court.*—Order reversed and cause remanded with directions.